UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROCKLAND VENDING CORP.,

            Plaintiff,

    **vs.**

ROXANNE CREEN, sued in her
individual capacity, MARSHA F. RILEY,
sued in her individual capacity,
STEWART KIDDER, sued in his
individual capacity,

            Defendants.
------------------------------------------------------x

**COMPLAINT**

07 CIV. 6268

.WP4

I. **PARTIES**

1.  Plaintiff, Rockland Vending Corp., is a corporation organized to do business in the State of New York and conducting business within this judicial district.

2.  Defendant Roxanne Creen is Chief Steward of the Shawangunk Correctional Facility [hereinafter "CF"], County of Ulster, and, as relevant to this matter, has conducted business within this judicial district.

3.  Defendant Marsha Riley is Chief Steward of the Lincoln CF in New York City.

4.  Defendant Stewart Kidder is the supervisor of stewards, an employee of

the New York State Department of Correctional Services [hereinafter "DOCS"]. His office is in Albany, and, by dint of his duties and state-wide responsibilities, he has connections sufficient with this district for it to assume jurisdiction over him for these purposes.

## II. **JURISDICTION**

5. All defendants are sued for actions taken under color of state law and for actions which plaintiff contends are outside the scope of their assigned duties.

6. As plaintiff alleges that defendants violated certain rights provided him by the First and Fourteenth Amendments to the United States Constitution, this Honorable Court has jurisdiction pursuant to 28 U.S.C. sec. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III. **FACTUAL ALLEGATIONS**

(a) **Background**

7. Plaintiff provides and services vending machines to customers.

8. Amongst plaintiff's customers are ten correctional facilities operated by the New York State Department of Correctional Services.

9. Plaintiff was chosen to provide vending services through a process of competitive bidding.

10. Plaintiff then signed contracts with the DOCS covering each

correctional facility to provide the needed vending services.

(b) **Shawangunk CF**

11.  Specifically, effective February 1, 2003,  plaintiff entered a contract to provide vending services at the Shawangunk C.F.

12.  Under that contract, plaintiff received "the exclusive right to install, operate and service the automated vending machines dispensing of food, beverages, snacks, candy, etc. at designated locations" at the facility.

13.  The contract required the contractor/plaintiff to replenish the machines five times a week.

14.  The contract required the facility to take normal and expected precautions to safeguard the vending machines and equipment and passed the risk of any loss or theft to plaintiff..

15.  Under the agreement, plaintiff was required to pay the facility 15% of total gross sales and a monthly space rental fee by the 10th of the following month.

16.  Apart from providing and serving vending machines covered by the contract, plaintiff was also responsible for paying "commissions" to each correctional facility based upon sales from each machine.

17.  The contracts did not allow the defendants to engage in self-help tactics of the sort alleged herein to settle disputes as to sums owed/not owed by plaintiff.

18. In February 2007, plaintiff, through its President, Michael Freed, advised defendant Creen that substantial quantities of goods were being pilfered from two refrigerated vending machines at Shawangunk C.F. and requested assistance in stopping those practices which were responsible for said losses.

19. Defendant Creen ignored Freed's request for assistance.

20. One week after notifying Creen of this issue, Freed again wrote her providing more exact figures, showing loss through theft of product of about $1500 during the prior four weeks, or upwards of 200 food items out of the plaintiff's food machines every week.

21. Again, Creen took no action and ignored plaintiff's concern.

22. On May 9, 2007, a Wednesday, plaintiff dispatched a driver with product to re-fill seven vending machines in the visiting room at Shawangunk C.F.

23. As of this date, plaintiff was behind in making monthly commission payments to Shawangunk C.F.

24. As of this date, defendant Creen had not notified plaintiff that its services were either suspended or terminated because of any delinquency in paying monthly commissions.

25. Upon his arrival at the facility, defendant Creen allowed the driver access to the visiting room.

26. Once plaintiff's employee was in the otherwise empty visiting room, defendant Creen detained plaintiff's driver and demanded that he open each vending machine and give her all the monies in the machine.

27. Plaintiff's driver protested that he lacked any authority to give defendant Creen such monies and explained that he was responsible for collecting these funds and returning them to plaintiff's headquarters.

28. Defendant Creen refused to allow the driver to as much as call plaintiff's office or to speak with Freed and demanded that he provide her, as he then did, all the collected funds.

29. Defendant Creen detained plaintiff's employee for approximately ninety minutes while she supervised his counting of all the proceeds from the vending machines.

30. Two days after engaging in the conduct described above and after plaintiff complained to legal authorities about her behavior, defendant Creen terminated plaintiff's vending contract at Shawangunk C.F.

31. On or about June 15, 2007, having failed to allow plaintiff to reclaim its vending machines, defendant Creen demanded disputed commissions and threatened to treat plaintiff's machines as abandoned property if plaintiff did not pay her disputed sums.

32.  The value of the vending machines being illegally held hostage at Shawangunk C.F. by defendant Creen is approximately $60,000.

© **Plaintiff's Protest of Defendant Creen's Conduct**

33.  The day defendant Creen detained its employee, plaintiff, through its President, Freed, protested to state police authorities concerning Creen's illegal conduct.

34.  The State Police refused to intervene, telling Freed that this was a "civil," not a criminal, matter.

35.  Thereafter, through counsel, plaintiff sought redress from the Department of Correctional Services and the New York State Attorney General's Office.

36.  No redress was forthcoming from either office.

(d) **Subsequent Events at Other Correctional Facilities**

37.  As a direct consequence of its requests for assistance from the New York State police and its exercise of the right to petition the government to investigate its grievances, plaintiff was advised that his contracts for vending services were being cancelled or non-renewed at Shawangunk [May 11], Eastern and Ulster [June 8] and Coxsackie [June 12] CF and plaintiff was disallowed from retrieving his vending equipment from Lincoln CF in late May 2007.

### (i) **Coxsackie CF**

38.  At Coxsackie CF, upon the direction of defendant Kidder, plaintiff was [1] directed to remove his vending machines and then [2] disallowed from removing one machine because of a dispute concerning payment of commission.

39.  In effect, at defendant Kidder's direction, said machine was held as ransom pending resolution of a dispute concerning payment.

40.  Such conduct is highly irregular and not contemplated by the contract between DOCS and plaintiff.

41.  Kidder engaged in this conduct in retaliation for plaintiff's complaint about the treatment it received at Shawangunk earlier that same month.

### (ii) **Eastern and Ulster CFs**

42.  At Eastern and Ulster CFs, the steward recommended to defendant Kidder that plaintiff's contract be extended.

43.  Indeed, during the week of June 4, 2007, the business officer responsible for these facilities advised plaintiff that she was pleased with its service and extending its contract one year.

44.  On or about June 11, 2007, plaintiff's President found an announcement in the New York State Contract Reporter advertising for this contract.

45.  Plaintiff's president contacted the business officer who told her that she

was forced by Albany of putting the contract out for bid and accused by Albany of being part of Freed's family because of how hard she fought for the extension of plaintiff's contract.

46. Plaintiff was not late in payment of commissions to either Eastern or Ulster C.F.

47. Plaintiff's service to both facilities was excellent and DOCS never sent a notice of termination or suspension of service with regard to service plaintiff provided at either facility.

**(iii) Lincoln CF**

48. At the Lincoln Facility, only after the incident of May 9, 2007 at Shawangunk did defendant Riley initially demand that plaintiff remove its vending machines by May 30, 2007, claiming falsely that it owed commission from March 31 through the end of May 2007.

49. Then, after plaintiff made arrangements to remove its machines, on May 29, 2007, defendant Riley refused to permit plaintiff to remove its vending machines unless it paid via certified check or money order a disputed sum she demanded.

50. On May 30, plaintiff dispatched a driver to the Lincoln CF, but he was prevented from entering the facility to fill the vending machines, to take plaintiff's

funds from the machine or to remove the machines from the facility.

51. At no time has plaintiff failed to refuse to perform any of the "work" in accordance with the contracts awarded to it by the Department of Correctional Services.

(e) **Defendants' Failure to Provide Notice of Deficiency**

52. Before engaging in the self-help described above, none of the defendants or the DOCS sent plaintiff a Notice of Termination as contemplated by the Invitation for Bids.

53. Nor did any of the defendants or DOCS order the contractor plaintiff to suspend perform of all or any part of the work for any period of time.

(f) **Impact of Challenged Conduct**

54. Loss of vending contracts at Shawangunk, Coxsackie, Eastern & Ulster CF will decrease plaintiff's annual gross sales by about $500,000 or 20% and cause plaintiff irreparable financial harm.

55. Such sudden business loss, absent judicial intervention, will cause plaintiff to proceed into Chapter 11 status.

56. Defendants' failure to allow plaintiff timely to retrieve his vending machines has, and shall continue, to impede his capacity to cover the substantial economic losses which stem from their wrongful conduct.

57. Defendants enjoy no qualified immunity for the violation of plaintiff's rights as alleged herein.

## IV. **CAUSES OF ACTION**

58. Plaintiff incorporates paras. 1-57, as if fully re-written herein.

59. By taking plaintiff's property without any pre or post-deprivation proceeding in an intentional, not random, manner, defendants denied plaintiff's right to due process of law as protected by the Fourteenth Amendment, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

60. By retaliating against plaintiff for the complaints made to the State Police and public officers concerning the illegal seizure of its employee and its assets, defendants violated the First Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

## V. **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays that this Court:

(a) accept jurisdiction over this matter;

(b) empanel a jury to assess plaintiff's legal claims and damages;

© temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from maintaining control and possession of plaintiff's vending machines;

(d) temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from breaking contracts with plaintiff absent compliance with the terms of said contracts or from failing to renew said contracts in retaliation for plaintiff's reporting of illegal acts on the part of defendant Creen to the New York State Police or public offices charged with investigating such matters;

(e) award to plaintiff compensatory and punitive damages for the violation of its rights as set forth herein;

(f) award to plaintiff the reasonable attorneys fees and costs incurred in prosecuting this matter and

(g) enter any other order necessary in the interests of law and equity.

Respectfully submitted,

Michael H. Sussman [3497]

Sussman & Watkins
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff