UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROCKLAND VENDING CORP.,

                              *Plaintiff*,

-against-

ROXANNE CREEN, sued in her individual capacity,
MARSHA F. RILEY, sued in her individual capacity,
STEWART KIDDER, sued in his individual capacity,

                              *Defendants*.

07 CV 6268 (WP)(MDF)

(Electronically Filed)


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER


                                                  ANDREW M. CUOMO
                                                  Attorney General of the State of New York
                                                  <u>Attorney for Defendants</u>
                                                  120 Broadway - 24th Floor
                                                  New York, New York  10271
                                                  (212) 416-6557

Steven N. Schulman
Daniel A. Schulze
Assistant Attorneys General
      <u>Of Counsel</u>

## INTRODUCTION

Plaintiff's vending machines have all been unconditionally released. Contrary to the implications of plaintiff's papers, the vast majority of these machines were never being held at all. The claims it asserts in this case should not be in federal court and have no chance of success. Plaintiff is tens-of-thousands of dollars in arrears in payments due to the New York State Department of Correctional Services ("DOCS") under the contracts at issue. It is not responding to telephone calls. The State Comptrollers Office has refused to authorize renewal of State agency contracts with the plaintiff until a satisfactory explanation is given. Plaintiff has even been banned from contracting with the City of New York's agencies for similar contract deficiencies.

Nonetheless, plaintiff's counsel refuses to withdraw his motion for a TRO seeking an injunction enjoining defendants from "breaking contracts with plaintiff absent compliance with the terms of said contracts or from failing to renew said contracts." (Order to Show Cause). Plaintiff's motion is frivolous.

## ARGUMENT

### POINT I

### THIS CONTRACT DISPUTE DOES NOT BELONG IN FEDERAL COURT

Plaintiff has no business bringing this case in federal court in the first place. As the complaint makes abundantly clear, this is a simple contract dispute. The Second Circuit directly holds that contract disputes, no matter how artfully pled, cannot be morphed into Section 1983 actions to manufacture subject matter jurisdiction in federal court. Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987). Accord TM Park Ave. Assocs. v. Pataki, 214 F.3d 344, 348-49 (2d. Cir. 2000)("the state, like any private party, must be able to breach contracts without turning every breach into a violation of the federal constitution"). See also Shawnee Sewerage & Drainage Co. v. Sterns,

220 U.S. 462, 471 (1911)("the breach of a contract is neither a confiscation of property nor a taking of property without due process of law").

Further, the contracting party, DOCS, is obviously a necessary party to this action – indeed, the only relief plaintiff still seeks on this motion is to enjoin termination of its' contracts with DOCS or require they be reinstated – and under the Eleventh Amendment DOCS cannot be haled into federal court to resolve any of these claims.  See Pennhurst Interstate Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-06 (1984).

The contracts at issue also include a broad forum selection clause specifying that all "disputes involving" the contracts must be commenced in the State courts of New York. (Freed Aff., Ex. 1 at Appendix A, Clause 16). This clause easily encompasses the claims brought in this lawsuit, which certainly "involve" the contracts, and, in fact, are thinly-disguised contract claims.  See Bense v. Interstate Battery Sys. of Am., 683 F.2d 718, 720 (2d Cir. 1982).

Any of the above grounds, standing alone, is sufficient reason for the Court to decline to hear this case.

## POINT II

### PLAINTIFF'S REQUEST FOR A
### TEMPORARY RESTRAINING ORDER HAS NO MERIT

The Second Circuit standard for preliminary injunctive relief typically requires a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.  See, e.g., Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999). However, when a party seeks a preliminary injunction against the government regarding action taken in the public interest,

that party must demonstrate both that it will suffer irreparable harm and that it is likely to succeed on the merits. New York City Environmental Justice Alliance v. Giuliani, 214 F.3d 65, 68 (2000).

Further, plaintiff's requested relief does not preserve the status quo – it would force the parties to renew contracts due to expire on their own terms. Where a plaintiff seeks to alter, rather than merely preserve, the status quo, it must make a "clear" or "substantial" showing of a likelihood of success. Forest City Daly Hous. Inc., 175 F.3d 144, 149-50 (2d Cir. 1999).

Here, plaintiff cannot demonstrate a likelihood of success – to the contrary, its claims are subject to immediate dismissal. Further, the request to return the vending machines is moot, and the only meaningful preliminary relief it still seeks, forcing a State agency to enter into contracts against its will, would not be available even if plaintiff won across the board after trial.

**A.      Plaintiff Will Not Succeed on the Merits**

Plaintiff's asserts a Due Process Claim and a First Amendment retaliation claim. Even leaving aside the jurisdictional issues set forth in Point I above, neither claim would survive an initial motion to dismiss.

The actions allegedly taken by DOCS, the termination of contracts, failure to renew contracts and detention of vending machines pending payment of monies it contended it was owed by plaintiff, were obviously taken pursuant to the contracts DOCS had with plaintiff. For the moment assuming arguendo that these actions were somehow a breach of the contracts – and, as shown hereafter, they were not – then plaintiff would have an action in State court on the contract. But the availability of this post-deprivation remedy defeats plaintiff's Due Process claim ab initio. TM Park Ave. Assocs., 214 F.3d at 348-50; Costello, 811 F.2d at 784.

Plaintiff's First Amendment claim is similarly subject to immediate dismissal. This claim could succeed only if: (1) plaintiff's employees' alleged complaints to the State police, DOCS, and

3

the Attorney General involved a matter of public concern; (2) the complaints were a substantial and motivating factor in the decision to terminate or fail to renew plaintiff's contracts; (3) defendants fail to show that they would have terminated or not renewed the contracts even in the absence of those complaints; and (4) DOCS interest in performing its duties outweighed plaintiff's interest in speaking on a matter of public concern. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993). See also Cobb v. Pozzi, 363 F.3d 89, 104-05 (2d Cir. 2004)("retaliation claims premised on the First Amendment right to petition are subject to [the] public concern requirement").

The complaints plaintiff alleges that its employees made involved its own interests rather than a matter of public concern, and cannot be the basis for a retaliation claim. See White Plains Towing, 991 F.2d at 1060; Reckson Operating Partnership L.P. v. New York State Urban Dev. Corp., 2006 U.S. Dist. LEXIS 49269 at **12-17 (S.D.N.Y. July 12, 2006).

Further, the two contracts that were terminated were terminated not because of any complaints plaintiff's employees may have made, but rather because plaintiff repeatedly failed to pay thousands of dollars of commissions that were owed, bounced checks, and did not respond to repeated phone calls about these matters. (See Ferri Aff., ¶¶ 9a, 9g, Exs. A, B, C).

The decisions not to renew some of plaintiff's other contracts were made for the identical reasons. (See id., ¶¶ 8, 11). The Court need not even consider this issue, however, because the contracts left DOCS with the absolute right to walk away after the expiration of the initial 3 year term – any renewals could occur only upon agreement of both parties and approval of the State Comptroller. (Freed Aff., 4th page of Exhibit 1 at Clause 8 ("Contract Period")). Plaintiff thus had no constitutionally protected property interest in regard to DOCS' options to renew the contracts. Bd. of Regents v. Roth, 408 U.S. 564, 577-78 (1972).

Finally, defendants note that plaintiff's underlying contract claims, which, of course, are not before the Court, are also completely meritless. The contracts gave DOCS the option to renew or not as it chooses and the right to terminate without cause for the convenience of the State. (Freed Aff., Ex. A at Clauses 8, 13). Plaintiff further admits that it had failed to make timely commission payments (Complaint, ¶ 23), and plaintiff's delinquencies under the contracts actually total well over ten thousand dollars and it has bounced many checks to DOCS. (Ferri. Aff., ¶¶ 4-9).

In fact, one facility's recent attempt to renew one of the plaintiff's contracts was <u>rejected</u> by the State Comptroller due to plaintiff's extensive history of failing to make payments on time and bouncing checks under other contracts. (Ferri. Aff., ¶ 8, Ex. D). Indeed, plaintiff's problems were so extensive that the New York City School Construction Authority has banned plaintiff from bidding on contracts for five years. (<u>Id.</u>). There was obviously more than sufficient cause for DOCS to terminate plaintiff's contracts. And the contracts expressly allowed DOCS to impound plaintiff's vending machines – as was briefly done at Shawgunk CF (Complaint, ¶ 31; Ferri Aff., Ex. B) – to secure performance or offset monies owed upon a termination for cause. (Freed Aff., Ex. A at Clause 12 and at Appendix A, Clause 9). Regardless, the temporary seizure of these machines is a non-issue on this motion, because all machines have now been released to plaintiff. (Ferri Aff., ¶¶ 12, 13).

**B.**     **<u>Plaintiff Has Failed to Demonstrate it Will Suffer Irreparable Injury</u>**

Plaintiff's sole evidence of irreparable injury is the unsupported statement of its president that it will suffer a decrease in "gross sales" of $500,000 if he loses four vending contracts with DOCS, and that it will cause him to take plaintiff into bankruptcy. (Freed Aff., ¶¶ 52-53). But giving an amount for "gross sales" lost does nothing to show the <u>revenue</u> loss to plaintiff – to the contrary, plaintiff's president elsewhere turns around and attempts to justify its withholding of payments to DOCS by arguing that these contracts <u>were not even profitable</u> to plaintiff due to theft and rising

5

material and fuel costs. (Id., ¶21). To state the obvious, one cannot be forced into bankruptcy through the loss of contracts that were unprofitable.

Regardless, this bare and self-serving allegation cannot support the extraordinary relief sought by plaintiff. SCM Corp. v. Xerox Corp., 507 F.2d 358, 363 (2d Cir. 1974).

## POINT III

### THE PRELIMINARY RELIEF SOUGHT IS NOT AVAILABLE IN ANY EVENT

Even if the Court were to ignore the fact that plaintiff's claims are meritless, it should still deny this motion because plaintiff would not be entitled to injunctive relief compelling DOCS to renew its contracts with plaintiff even if it prevailed. As noted above, the contracts give DOCS the option to renew or not as it chooses and the right to terminate without cause for the convenience of the State, and plaintiff's repeated failure to make timely commission payments would be more than enough cause to decide not to renew. The State Comptroller has even rejected an attempt to renew one of the contracts because of plaintiff's delinquencies. (Ferri. Aff., ¶ 8, Ex. D). Even if plaintiff prevailed across the board, he would only be entitled to an award of damages - not an order compelling DOCS to enter into further contracts. See, e.g., SCM Corp. v. Xerox Corp., 507 F.2d 358, 363 (2d Cir. 1974). Defendants are simply not aware of a single case where a federal court issued preliminary injunctive relief under such circumstances.

The Court should be loathe to force the State to contract with an entity that has proven itself, again and again, to be completely untrustworthy.

**CONCLUSION**

Plaintiff's motion should be denied.

Dated: New York, New York
July 23, 2007

                                        ANDREW M. CUOMO
                                        Attorney General of the State of New York
                                        <u>Attorney for Defendants</u>
                                        By:

                                        /s/
                                        Daniel Schulze (DS 4198)
                                        Assistant Attorney General
                                        120 Broadway - 24th Floor
                                        New York, New York  10271
                                        (212) 416-6557

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that I served a true and correct copy of the following papers:

1. **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**;

2. **AFFIDAVIT OF NANNETTE E. FERRI IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TRO**;

upon:

      Michael H. Sussman
      Sussman & Watkins
      P.O. Box 1005
      Goshen, New York 10924

by filing the document pursuant to the ECF rules of the Southern District of New York, and by depositing the papers enclosed in a properly addressed wrapper, postage prepaid, into the custody of the United States mail. Courtesy copies of these electronically filed documents were also sent to Mr. Sussman by e-mail.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on July 23, 2007.

      /s/
      Daniel A. Schulze
      Assistant Attorney General