UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROCKLAND VENDING CORP., KENNETH
GALLAGHER,

        Plaintiffs,

vs.

ROXANNE CREEN, sued in her
individual capacity, MARSHA F. RILEY,
sued in her individual capacity,
STEWART KIDDER, sued in his
individual capacity,

        Defendants.
-----------------------------------------------------------x

**AMENDED COMPLAINT**

07-cv-6268-cv (KAK/MDF]

## I. PARTIES

1. Plaintiff, Rockland Vending Corp., is a corporation organized to do business in the State of New York and conducting business within this judicial district.

2. Plaintiff Kenneth Gallagher, an adult of legal age, is a resident of the County of Orange and, at all times relevant hereto, was employed by Rockland Vending Corp.

3. Defendant Roxanne Creen is Chief Steward of the Shawangunk Correctional Facility [hereinafter "CF"], County of Ulster, and, as relevant to this

Page -1-

Page 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

matter, has conducted business within this judicial district.

4. Defendant Marsha Riley is Chief Steward of the Lincoln CF in New York City.

5. Defendant Stewart Kidder is the supervisor of stewards, an employee of the New York State Department of Correctional Services [hereinafter "DOCS"]. His office is in Albany, and, by dint of his duties and state-wide responsibilities, he has connections sufficient with this district for it to assume jurisdiction over him for these purposes.

## II. JURISDICTION

6. All defendants are sued for actions taken under color of state law and for actions which plaintiffs contend are outside the scope of their assigned duties.

7. As plaintiffs allege that defendants violated certain rights provided them by the First, Fourth and/or Fourteenth Amendments to the United States Constitution, this Honorable Court has jurisdiction pursuant to 28 U.S.C. sec. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III. FACTUAL ALLEGATIONS

(a) **Background**

8. Plaintiff, Rockland Vending Corp. [hereinafter "RVC"], provides and services vending machines to customers.

Page -2-

9. As of January 1, 2007, amongst RVC's customers were ten correctional facilities operated by the New York State Department of Correctional Services.

10. RVC was chosen to provide vending services through a process of competitive bidding.

11. RVC then signed contracts with the DOCS covering each correctional facility to provide the needed vending services.

(b) **Shawangunk CF**

12. Effective February 1, 2003, RVC entered a contract to provide vending services at the Shawangunk C.F.

13. Under that contract, RVC received "the exclusive right to install, operate and service the automated vending machines dispensing of food, beverages, snacks, candy, etc. at designated locations" at the facility.

14. The contract required the contractor/RVC to replenish the machines five times a week.

15. The contract required the facility to take normal and expected precautions to safeguard the vending machines and equipment and passed the risk of any loss or theft to RVC..

16. Under the agreement, RVC was required to pay the facility 15% of total gross sales and a monthly space rental fee by the 10th of the following month.

Page -3-

17. Apart from providing and serving vending machines covered by the contract, RVC was also responsible for paying "commissions" to each correctional facility based upon sales from each machine.

18. The contracts did not allow the defendants to engage in self-help tactics of the sort alleged herein to settle disputes as to sums owed/not owed by RVC.

19. In February 2007, RVC, through its President, Michael Freed, advised defendant Creen that substantial quantities of goods were being pilfered from two refrigerated vending machines at Shawangunk C.F. and requested assistance in stopping those practices which were responsible for said losses.

20. Defendant Creen ignored Freed's request for assistance.

21. One week after notifying Creen of this issue, Freed again wrote her providing more exact figures, showing loss through theft of product of about $1500 during the prior four weeks, or upwards of 200 food items out of the RVC's food machines every week.

22. Again, Creen took no action and ignored RVC's concern.

23. On May 9, 2007, a Wednesday, RVC dispatched PLAINTIFF Ken Gallagher, a driver it employed, to service vending machines in the visiting room at Shawangunk C.F.

24. As of this date, RVC was behind in making monthly commission

Page -4-

payments to Shawangunk C.F.

25. As of this date, defendant Creen had not notified RVC that its services were either suspended or terminated because of any delinquency in paying monthly commissions.

26. Upon his arrival at the facility, defendant Creen allowed Gallagher access to the visiting room.

27. Once Gallagher was in the otherwise empty visiting room, defendant Creen detained him and demanded that he open each vending machine and give her all the monies in the machine.

28. Plaintiff Gallagher protested that he lacked authority to give defendant Creen such monies and explained that he was responsible for collecting these funds and returning them to RVC's headquarters.

29. Defendant Creen refused to allow plaintiff Gallagher to call RVC's office or to speak with Freed and, instead, demanded that he provide her, as he then did, all the collected funds.

30. Defendant Creen detained Gallagher for approximately forty five minutes while she supervised his counting of all the proceeds from the vending machines.

31. Two days after engaging in the conduct described above and after RVC

Page -5-

complained to legal authorities about her behavior, defendants Creen and Kidder terminated RVC's vending contract at Shawangunk C.F.

32. On or about June 15, 2007, having failed to allow RVC to reclaim its vending machines, defendant Creen demanded disputed commissions and threatened to treat RVC's machines as abandoned property if RVC did not pay her disputed sums.

33. The value of the vending machines being illegally held hostage at Shawangunk C.F. by defendant Creen is approximately $60,000.

© **RVC's Protest of Defendant Creen's Conduct**

34. The day defendant Creen detained its employee, RVC, through its President, Freed, protested to state police authorities concerning Creen's illegal conduct.

35. The State Police refused to intervene, telling Freed that this was a "civil," not a criminal, matter.

36. Thereafter, through counsel, RVC sought redress from the Department of Correctional Services and the New York State Attorney General's Office.

37. No redress was forthcoming from either office.

(d) **Subsequent Events at Other Correctional Facilities**

38. As a direct consequence of its requests for assistance from the New

Page -6-

York State police and its exercise of the right to petition the government to investigate its grievances, RVC was advised that his contracts for vending services were being cancelled or non-renewed at Shawangunk [May 11], Eastern and Ulster [June 8], Coxsackie [June 12] and Woodburne [August 24]. Likewise, RVC was disallowed from retrieving its vending equipment from Lincoln CF in late May 2007.

39. At Coxsackie CF, upon the direction of defendant Kidder, RVC was [1] directed to remove its vending machines and then [2] disallowed from removing one machine because of a dispute concerning payment of commission.

40. In effect, at defendant Kidder's direction, said machine was held as ransom pending resolution of a dispute concerning payment.

41. Such conduct is highly irregular and not contemplated by the contract between DOCS and RVC.

42. Kidder engaged in this conduct in retaliation for RVC's complaint about the treatment it received at Shawangunk earlier that same month.

**(i) Eastern and Ulster CFs**

43. At Eastern and Ulster CFs, the steward recommended to defendant Kidder that RVC's contract be extended.

44. Indeed, during the week of June 4, 2007, the business officer

Page -7-

responsible for these facilities advised RVC that she was pleased with its service and extending its contract one year.

45. On or about June 11, 2007, RVC's President found an announcement in the New York State Contract Reporter advertising for this contract.

46. RVC's president contacted the business officer who told her that she was forced by Albany of putting the contract out for bid and accused by Albany of being part of Freed's family because of how hard she fought for the extension of RVC's contract.

47. RVC was not late in payment of commissions to either Eastern or Ulster C.F.

48. RVC's service to both facilities was excellent and DOCS never sent a notice of termination or suspension of service with regard to service RVC provided at either facility.

**(ii) Lincoln CF**

49. At the Lincoln Facility, only after the incident of May 9, 2007 at Shawangunk did defendant Riley initially demand that RVC remove its vending machines by May 30, 2007, claiming falsely that it owed commission from March 31 through the end of May 2007.

50. Then, after RVC made arrangements to remove its machines, on May

Page -8-

29, 2007, defendant Riley refused to permit RVC to remove its vending machines unless it paid via certified check or money order a disputed sum she demanded.

51. On May 30, RVC dispatched a driver to the Lincoln CF, but he was prevented from entering the facility to fill the vending machines, to take RVC's funds from the machine or to remove the machines from the facility.

52. At no time has RVC failed to refuse to perform any of the "work" in accordance with the contracts awarded to it by the Department of Correctional Services

. **(iii) Otisville CF**

53. In the same time period and without good cause and in retaliation for the aforecited protected activity, defendant Kidder caused the non-renewal of RVC's contract with the Otisville C.F.

54. Immediately after replacing plaintiff RVC with another vending company, Kidder permitted the new company to more than double its price on sandwiches.

**(iv) Fulton CF**

55. On August 16, 2007, RVC's driver advised Michael Freed that Fulton CF was terminating its contract with RVC effective August 30, 2007.

56. Said contract was scheduled to continue through the 2007 calendar year.

Page -9-

57. No neutral, non-retaliatory reason justified breach of this contract and instead Kidder caused said breach in further retaliation for the litigation which RVC here initiated.

**(v) Woodburne CF**

58. By letter dated August 24, 2007, the steward and superintendent of Woodburne CF advised RVC that they would not renew its vending contract.

59. Said letter was faxed to RVC on August 30, 2007, one day before the last date of its contract at and with this facility.

60. Defendant Kidder caused the non-renewal of this contract out of retaliation for RVC's protected activity as set forth herein.

**(e) Defendants' Failure to Provide Notice of Deficiency**

61. Before engaging in the conduct set forth above, none of the defendants or the DOCS sent RVC a Notice of Termination as contemplated by the Invitation for Bids.

62. Nor did any of the defendants or DOCS order the contractor RVC to suspend perform of all or any part of the work for any period of time.

**(f) Impact of Challenged Conduct**

63. Loss of vending contracts at Shawangunk, Coxsackie, Eastern & Ulster CF, Otisville, Fulton & Woodburne will decrease RVC's annual gross sales by

Page -10-

about $725,000 or 30% and cause RVC irreparable financial harm.

64. Such sudden business loss, absent judicial intervention, has caused RVC to proceed into Chapter 11 status.

65. Defendants' failure to allow RVC timely to retrieve its vending machines impeded its capacity to cover the substantial economic losses which stem from their wrongful conduct.

66. Defendants enjoy no qualified immunity for the violation of RVC's rights as alleged herein.

IV. **CAUSES OF ACTION**

67. RVC incorporates paras. 1-66, as if fully re-written herein.

68. By taking RVC's property without any pre or post-deprivation proceeding in an intentional, not random, manner, defendants denied RVC's right to due process of law as protected by the Fourteenth Amendment, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

69. By holding him against his will without due process and restricting his liberty, defendant Creen violated plaintiff Gallagher's rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution as made actionable by 42 U.S.C. sec. 1983.

70. By retaliating against RVC for the complaints made to the State Police

Page -11-

and public officers concerning the illegal seizure of its employee and its assets, defendants violated the First Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs prays that this Court:

(a) accept jurisdiction over this matter;

(b) empanel a jury to determine plaintiffs' legal claims and damages;

© temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from maintaining control and possession of plaintiff RVC's vending machines;

(d) temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from breaking contracts with plaintiff RVC absent compliance with the terms of said contracts or from failing to renew said contracts in retaliation for plaintiff RVC's reporting of illegal acts on the part of defendant Creen to the New York State Police or public offices charged with investigating such matters;

(e) award to plaintiffs compensatory and punitive damages for the violation of their rights as set forth herein;

(f) award to plaintiffs the reasonable attorneys fees and costs incurred in

Page -12-

prosecuting this matter, and

(g) enter any other order necessary in the interests of law and equity.

Respectfully submitted,

Michael H. Sussman [3497]

Sussman & Watkins
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for RVC

Dated: September 4, 2007

## **CERTIFICATE OF SERVICE**

MICHAEL H. SUSSMAN, having been duly sworn, hereby certifies that on September 5, 2007, he mailed, postage pre-paid, plaintiffs' Amended Complaint upon Steven N. Schulman and Daniel A. Schultze, Esqs., Assistant Attorneys General, 120 Broadway, 24th Floor, NY, NY 10271., counsel for defendants.

_____
MICHAEL H. SUSSMAN, ESQ.