EXHIBIT 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROCKLAND VENDING CORP.,

               Plaintiff,

     **vs.**

ROXANNE CREEN, sued in her
individual capacity, MARSHA F. RILEY,
sued in her individual capacity,
STEWART KIDDER, sued in his
individual capacity,

               Defendants.
-------------------------------------------------x

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss:s. |
| COUNTY OF ORANGE | ) |

## AFFIDAVIT OF MICHAEL FREED

I, Michael Freed, a resident of the County of Rockland, and a person of legal age, hereby states and deposes under pains and penalties of perjury:

1. Plaintiff, Rockland Vending Corp., is a corporation organized to do business in the State of New York and conducts business within this judicial district. I am the President of this company which has been in business for more than thirty years.

2. Defendant Roxanne Creen is Chief Steward of the Shawangunk

Correctional Facility [hereinafter "CF"], County of Ulster, and has conducted business with my company in this judicial district.

3. Defendant Marsha Riley is Chief Steward of the Lincoln CF in New York City.

4. Defendant Stewart Kidder is the supervisor of stewards, an employee of the New York State Department of Correctional Services [hereinafter "DOCS"]. His office is in Albany, and, through his duties and state-wide responsibilities, has connections with this judicial district.

5. Plaintiff company provides and services vending machines to customers.

6. Amongst plaintiff's customers are ten correctional facilities operated by the New York State Department of Correctional Services.

7. Plaintiff was chosen to provide vending services through a process of competitive bidding. See, Exhibit 1 for an example, of the Bidding Documents submitted for the Shawangunk C.F.

8. Plaintiff then signed contracts with the DOCS covering each correctional facility to provide the needed vending services. See, Exhibit 2 for signed contract with Shawangunk C.F.

9. Specifically, effective February 1, 2003, plaintiff entered a contract to provide vending services at the Shawangunk C.F. Id.

10. By and through that contract, plaintiff received "the exclusive right to install, operate and service the automated vending machines dispensing of food, beverages, snacks, candy, etc. at designated locations" at the facility. Id.

11. The contract required my company to replenish the machines five times a week.

12. The contract required the facility to take normal and expected precautions to safeguard the vending machines and equipment and passed the risk of any loss or theft to my company.

13. The agreement required Rockland Vending to pay the facility 15% of total gross sales and a monthly space rental fee by the 10th of the following month.

14. Apart from providing and serving vending machines covered by the contract, we were also responsible for paying "commissions" to each correctional facility based upon sales from each machine.

15. The contracts did not allow the defendants to engage in self-help tactics of the sort we have been subjected to as a means of settling disputes as to sums owed/not owed by plaintiff.

16. In February 2007, I advised defendant Creen that substantial quantities of goods were being pilfered from two refrigerated vending machines at Shawangunk C.F. and requested assistance in stopping those practices which were

responsible for said losses. <u>See,</u> Exhibit 3.

17.  Defendant Creen ignored my request for assistance.

18.  One week after notifying Creen of this issue, I again wrote her providing more exact figures which showed business loss through theft of product of about $1500 during the prior four weeks, or upwards of 200 food items out of our food machines every week. <u>See,</u> Exhibit 4.

19.  Again, Creen took no action and ignored my concerns.

20.  On May 9, 2007, a Wednesday, we dispatched an experienced driver, Gallagher, with product to re-fill seven vending machines in the visiting room at Shawangunk C.F.

21.  As of this date, my company behind in making monthly commission payments to Shawangunk C.F.  This was due to two factors: first, the repeated theft of product from our vending machines and, second, the facility's refusal to sufficiently raise vending machine prices to account for substantial increases in costs of fuel and product.

22.  As of this date, defendant Creen had not notified us that our services were either suspended or terminated because of any delinquency in paying monthly commissions.

23. As is further set forth in his Affidavit, upon Gallagher's arrival at

Shawangunk C.F., defendant Creen allowed him to access to the visiting room.

24. Once he was in the otherwise empty visiting room, defendant Creen detained him and demanded that he open each vending machine and give her all the monies in the machine.

25. Gallagher protested that he lacked any authority to give defendant Creen such monies and explained that he was responsible for collecting these funds and returning them to our headquarters in Chester, New York.

26. Defendant Creen refused to allow the driver to as much as call my office or to speak with me and demanded that he provide her, as he then did, all the collected funds.

27. Defendant Creen detained plaintiff's employee for approximately ninety minutes while she supervised his counting of all the proceeds from the vending machines.

28. Two days after engaging in the conduct described above and after plaintiff complained to legal authorities about her behavior, defendant Creen terminated our vending contract at Shawangunk C.F.

30. On or about June 15, 2007, having failed to allow us to reclaim our vending machines, defendant Creen demanded disputed commissions and threatened to treat our machines as abandoned property if we did not pay her

disputed sums.

31.   The value of the vending machines being illegally held hostage at Shawangunk C.F. by defendant Creen is approximately $60,000.

32.   The day defendant Creen detained its employee, I contacted NY State Police and demanded action against Creen for her illegal conduct.

33.   The State Police refused to intervene, telling me that this was a "civil," not a criminal, matter.

34.   Thereafter, through counsel, I sought redress from the Department of Correctional Services and the New York State Attorney General's Office. See, Exhibit 5.

35.   No redress was forthcoming from either office.

36.   As a direct consequence of its requests for assistance from the New York State police and its exercise of the right to petition the government to investigate its grievances, I was advised that his contracts for vending services were being cancelled or non-renewed at Shawangunk [May 11], Eastern and Ulster [June 8] and Coxsackie [June 12] CF and my company was disallowed from retrieving his vending equipment from Lincoln CF in late May 2007.

(i) **Coxsackie CF**

37.   At Coxsackie CF, upon the direction of defendant Kidder, we were [1]

directed to remove our vending machines and then [2] disallowed from removing one machine because of a dispute concerning payment of commission.

38.  In effect, at defendant Kidder's direction, said machine was held as ransom pending resolution of a dispute concerning payment.

39.  Such conduct is highly irregular and not contemplated by the contract between DOCS and my company.

40.  Kidder engaged in this conduct in retaliation for my complaint about the treatment my company received at Shawangunk earlier that same month.

**(ii) Eastern and Ulster CFs**

41.  At Eastern and Ulster CFs, the business officer told me that she recommended to defendant Kidder that our contract be extended for one year, through summer

2008.

42.  Indeed, during the week of June 4, 2007, the business officer responsible for these facilities advised me that she was pleased with our service and going it extending our contract one year.

43.  On or about June 11, 2007, I found an announcement in the New York State Contract Reporter advertising for this contract.

44.  I contacted the business officer who told me that she was forced by

Albany to put the contract out for bid and accused by Albany of being part of my family because of how hard she fought for the extension of Rockland Vending's contract.

45. Rockland Vending was not late in payment of commissions to either Eastern or Ulster C.F.

46. Our service to both facilities was excellent and DOCS never sent a notice of termination or suspension of service with regard to service we provided at either facility.

**(iii) Lincoln CF**

47. At the Lincoln Facility, only after the incident of May 9, 2007 at Shawangunk did defendant Riley initially demand that we remove our vending machines by May 30, 2007, claiming falsely that we owed commission from March 31 through the end of May 2007.

48. Then, after I arranged to remove our machines, on May 29, 2007, defendant Riley refused to permit us to do so unless we paid via certified check or money order a disputed sum she demanded.

49. On May 30, I dispatched a driver to the Lincoln CF, but he was prevented from entering the facility to fill the vending machines, to take our funds from the machine or to remove our machines from the facility.

50.  Before engaging in the self-help described above, none of the defendants or the DOCS sent us a Notice of Termination as contemplated by the Invitation for Bids or contracts we had signed.

51.  Nor did any of the defendants or DOCS order Rockland Vending to suspend perform of all or any part of the work for any period of time.

52.  Loss of vending contracts at Shawangunk, Coxsackie,  Eastern & Ulster CF will decrease my company's annual gross sales by about $500,000 or 20% and cause us irreparable financial harm.

53.  Such sudden business loss, absent judicial intervention, will cause me to take Rockland Vending corp. into Chapter 11 status.

54.  Defendants' failure to allow us timely to retrieve our vending machines has, and shall continue, to impede our capacity to cover the substantial economic losses which stem from their wrongful conduct.

WHEREFORE, I REQUEST THAT THIS COURT temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from maintaining control and possession of Rockland Vending Corporations's vending machines and  temporarily, preliminarily and permanently enjoin defendants and those acting in concert with them, their agents and successors from breaking contracts with Rockland Vending

Corp. absent compliance with the terms of said contracts or from failing to renew

said contracts in retaliation for my reporting of illegal acts on the part of defendant

Creen to the New York State Police or public offices charged with investigating

such matters

MICHAEL FREED

DATED: JULY 2, 2007

SIGNED AND SWORN TO BEFORE ME THIS 2nd DATE OF JULY 2007.

NOTARY PUBLIC
EVELYN BELL
NOTARY PUBLIC, STATE OF NEW YORK
ORANGE COUNTY, # 4921454
COMMISSION EXPIRES MARCH 14, 20 10

Page -10-