UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROCKLAND VENDING CORP., KENNETH GALLAGHER,<br><br>                                         *Plaintiffs*,<br><br>             -against-<br><br>ROXANNE CREEN, sued in her individual capacity,<br>MARSHA F. RILEY, sued in her individual capacity,<br>STEWART KIDDER, sued in his individual capacity,<br><br>                                         *Defendants*. | 07 CV 6268 (KMK)(MDF)<br><br>(Electronically Filed) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ANDREW M. CUOMO
Attorney General of the State of New York
<u>Attorney for Defendants</u>
120 Broadway - 24th Floor
New York, New York  10271
(212) 416-6557

Daniel A. Schulze
Assistant Attorney General
         <u>Of Counsel</u>

## INTRODUCTION

Defendants Roxann Creen, Marsha Riley and Stewart Kidder respectfully submit this reply memorandum of law in further support of their motion for summary judgment.

Rockland argues that it has a viable due process claim on the undisputed facts because "[s]et off has nothing to do with self help and self help is not authorized, in any form, in the contract signed by the parties," and contends defendants were thus required to provide plaintiff with notice and an opportunity to be heard. But DOCS' right to set-off is specifically recognized in the parties' contracts, set-off is, by its very definition, a right to exercise self-help, and self-help, once again by its very definition, requires no pre-deprivation hearing. In any event, the availability of a post-deprivation State court proceeding is a fully sufficient remedy in this context.

The retaliation claims asserted by Rockland fare no better. The claim against defendant Riley fails because it is undisputed that Rockland was unable to pick up its machines on May 30, 2007 at her facility only because they failed to make advance arrangements, and they picked them up 2 days later. Even assuming <u>arguendo</u> that this amounts to a "detention" – and it does not – there is no evidence that it was retaliatory, and it would be a <u>de minimus</u> event for First Amendment purposes. Similarly, the undisputed evidence shows that Ms. Creen did not terminate Rockland's contract with her facility in retaliation for its complaints – the contract was in effect up to the very day that Rockland conclusively stated that it would no longer perform. Finally, plaintiffs cite <u>no evidence whatsoever</u> for their arguments that Mr. Kidder was involved in the decisions not to renew any Rockland contracts – and the undisputed evidence shows that they were handled at the facility level.

Mr. Gallagher's claim for false imprisonment against Ms. Creen fails as well. Mr. Gallagher was free to leave at anytime, and admits that he neither made an attempt nor requested to leave the facility in which he contends he was "detained."

In any event, defendants are entitled to qualified immunity. There is absolutely no support for plaintiffs' contention that qualified immunity does not apply to First Amendment and due process claims. Plaintiffs fail to even address most of the arguments in defendants' opening brief establishing that a reasonable official would not have believed that any of the actions taken were violations of plaintiff's clearly established constitutional rights.

## ARGUMENT

### POINT I

### ROCKLAND'S DUE PROCESS CLAIM IS MERITLESS

The parties agree on all material facts underlying Rockland's due process claim, but Rockland argues that it has a viable due process claim on those facts because "[s]et off has nothing to do with self help and self help is not authorized, in any form, in the contract signed by the parties" (Pl. Opp. at 13), and defendants were required to provide plaintiff with notice and an opportunity to be heard before engaging in self-help. (Id., at 13-16). Plaintiff is wrong on both counts.

Rockland concedes, as it must, that DOCS' right to set-off is specifically recognized in the parties' contracts. (Pl. Rule 56.1 Statement, ¶ 15). But this is the end of its due process claim – far from having "nothing to do" with one another, set-off is, by its very definition, a right to exercise self-help: "set-off is a self-help procedure originating in ancient Roman law and continuing to date in American jurisprudence." Frazier v. Marine Midland Bank, N.A., 702 F. Supp. 1000, 1003 (W.D.N.Y. 1988). And self-help, once again by its very definition, requires no "pre-deprivation hearing." See, e.g., 11-55 Corbin on Contracts § 55.1 (2007 Ed.)(when a provision of a contract authorizes "self-help," then "one is permitted, without calling upon any officer of the law, judicial or administrative, to attempt to redress one's own wrongs or to prevent their occurrence").

2

In any event, even if the right to set-off was not properly exercised here, the availability of a post-deprivation State court proceeding is a fully sufficient remedy in this context. As noted in defendants' opening brief, Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881-82 (2d Cir. 1996) is almost directly on point and should control. Plaintiffs' attempt to distinguish this case (Pl. Opp. at 15-16) is futile – the actions alleged here are affirmatively alleged to have been "random and unauthorized" in exactly the same legal sense as the similar actions in Hellenic Am. – defendants are alleged to have taken the law into their own hands in ending contracts and seizing funds rather than following proper procedures. Plaintiffs do not cite not a single case in support of their contention that a pre-deprivation hearing was required in this context.

## POINT II

## ROCKLAND'S RETALIATION CLAIMS ARE MERITLESS

Plaintiffs admit that Rockland's speech was not chilled, but argue that Rockland is not required to show a chill under Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). (Pl. Opp. at 16-18). The Second Circuit line of cases including Morris has been limited to claims brought by government employees. See Morrison v. Johnson, 429 F.3d 48, 50-52 (2d Cir. 2005)(explaining this distinction). Defendants agree with plaintiffs, however, that retaliation claims brought by a party contracting with the government under Board of County Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996), are in many respects conceptually similar to claims brought by government employees, and it is thus an open issue in this Circuit as to whether such plaintiffs need to show an actual chill.

In any event, this open issue need not be decided because all Rockland's retaliation claims immediately fail under the Morris test as well.

3

A.  **The Retaliation Claim Against Ms. Riley Fails**

The claim in plaintiffs' brief that defendant Riley impounded Rockland's machines at Lincoln in retaliation for plaintiff's complaints on May 9, 2007 is contradicted by the evidence. It is undisputed that Rockland was unable to pick up its machines on May 30, 2007 only because they failed to make advance arrangements with the Lincoln facility, and that Rockland did pick up their equipment without incident on June 1, 2007, only two days later - well over one month before this lawsuit was commenced. (Schulze Aff., Ex. G at ¶¶ 2-4; Ex. I at ¶ 9(f); Ex. L, Ex. M).[1] Even assuming arguendo that this amounts to a "detention" – and it does not – there is no evidence that it was retaliatory, and it would in any event be a de minimus event for First Amendment purposes. See, e.g., Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). Plaintiffs' new contention that Ms. Riley retaliated against Rockland by cancelling a single meeting with its president (Pl. Opp. at 18) is too trivial to warrant further discussion.

B.  **The Retaliation Claim Against Ms. Creen Fails**

Similarly, Rockland cannot demonstrate a causal connection between Mr. Freed's May 9, 2007 complaint to the State Police and the termination of the Shawangunk facility contract. To the contrary, Ms. Creen called Rockland on May 10, 2007, the day after Mr. Freed's complaint, to confirm that Rockland intended to continue performance. (Schulze Aff., Ex. T, Ex. U). It was not until after Rockland informed her that they would not return to Shawangunk to service the vending machines, which created a critical situation and constituted a repudiation of the contract (id., Ex. A

---

[1] Plaintiffs are wrong to continually argue that Rockland was not able to enter Lincoln to pick up its machines on May 30, 2007 while concealing the fact that it retrieved those same machines without incident only two days later.

4

at 72-73), that she sent notice that the Shawangunk contract was terminated. (Id., Ex. A at 62-63, 72-73; Ex. E at 60, 73-74; Ex. F at ¶¶ 5-6; Ex. H at 49-50; Ex. S; Ex. T; Ex. U).

Plaintiffs' only response is to contend that it could be inferred that Ms. Creen wanted to be rid of Rockland because of Mr. Freed's complaints. (Pl Opp. at 19). For this proposition, plaintiff references a purported statement by Ms. Creen advising Mrs. Freed and Mr. Gallagher that "any driver sent would be detained and made to disgorge [Rockland's] proceeds to Creen and her staff." (Id.). But plaintiff cites no evidence for this contention. In fact, the only similar statement made by Ms. Creen found anywhere in the record is in her call to Mrs. Freed the morning of the incident – which call occurred well before Mr. Freed made his complaints to the police (and did not mention "detention"). (Plaintiffs' Rule 56.1 Statement, ¶¶ 223-24 and evidence cited therein). She thus could not have been contemplating "retaliation" for complaints that had not yet been made. Similarly, while there is no evidence that Ms. Creen made such a statement to Gallagher, the only time they ever spoke was on the morning of May 9, 2007 – again well before Mr. Freed made his complaints.

Further, as noted above, the contention that Ms. Creen wanted to be rid of Rockland because of Mr. Freed's complaints is contradicted by the fact that she called the day after those complaints were made to urge Rockland to continue to perform the contract. Finally, the simple and undisputed fact is that it was Rockland itself that effectively ended the contract through its flat refusal to perform. Ms. Creen was left with no real choice in the matter.

**C.    The Retaliation Claim Against Mr. Kidder Fails**

Plaintiffs cite no evidence for the many outlandish statements in their brief that baldly claim Mr. Kidder was "thigh-deep" in the administration of Rockland's contracts, (Pl Opp. at 3, 19), all of which are contradicted by the facts of record. They further cite no evidence to support their denial of defendants' statements establishing Mr. Kidder's non-involvement (Pl. Rule 56.1 Statement, ¶¶5-

5

7). All these statements in Defendants Rule 56.1 Statement are accordingly admitted as a matter of law for purposes of this motion. See, e.g., DeLuca v. Bank of Tokyo-Mitsubishi UFJ, Ltd., 2008 U.S. Dist. LEXIS 25916 at *20 (S.D.N.Y. March 31, 2008)("Although the plaintiff asserts that many facts asserted by the defendant are 'denied,' they are actually deemed admitted where the plaintiff fails to cite to admissible evidence controverting the defendant's statements. See Fed. R. Civ. P. 56(e)(2)"); Archie Comic Publ'ns, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 317-19 (S.D.N.Y. 2003)(same); Fernandez v. DeLeno, 71 F. Supp. 2d 224, 227 (S.D.N.Y. 1999)(same).[2] These facts establish Mr. Kidder's non-involvement, and the Court need proceed no further.

In any event, the issue is clearly not, as plaintiffs would have it, simply whether a reasonable jury could disbelieve Mr. Kidder's sworn statements that he was uninvolved in decisions not to renew Rockland's contracts. (Pl. Opp. at 19). The issue is whether a reasonable jury could disbelieve the statements of Mr. Kidder (Schulze Aff., Ex. C at 11-12, 18, 28, 30); and his assistant Ms. Ferri (id., Ex. D at 11, 18-20, 31-34); and DOCS counsel Glassanos (id., Ex. H at 27-30); and Ms. Creen, Steward of Shawangunk CF (id., Ex. F at ¶¶ 6-7); and the representatives of every facility where a contract with Rockland was not renewed (id., Ex. V; Ex. W; Ex. X), all of whom swear that Mr. Kidder was not involved in those decisions, where plaintiffs provide no evidence to the contrary.

---

[2]These facts would be deemed admitted whether or not such evidence was cited in Plaintiffs' Statement of Material Facts that follows its Rule 56.1 response: "while it "is permissible for the non-movant to provide a separate statement, apart from this paragraph -by-paragraph response, in which it lists other facts it claims to be in dispute, this separate statement is not a substitute for the paragraph-by-paragraph response. The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted in its paragraph-by-paragraph response without citation." Archie Comic Publ'ns, 258 F. Supp. 2d at 318.
   In point of fact, there is also no evidence cited in Plaintiffs' Statement of Material Facts that in any way supports their "denial" of paragraphs 5-7.

## POINT III

## PLAINTIFF GALLAGHER'S FALSE IMPRISONMENT
## CLAIM AGAINST DEFENDANT CREEN IS MERITLESS

It is undisputed that Mr. Gallagher was never told that he was not free to leave Shawangunk CF on May 9, 2007. It is undisputed that no one threatened Mr. Gallagher, attempted to block his path, or lay hands upon him. It is undisputed that he never asked to leave or communicated any desire to do so. It is undisputed that he never attempted to leave until he finished servicing the vending machines, at which time he left without incident. The simple fact that he was inside a correctional facility as a regular part of his job is obviously insufficient in itself to support his claim.

In short, plaintiffs offer absolutely no evidence to show that Mr. Gallagher was ever held against his will, <u>let alone</u> that Ms. Creen intended to do so. While plaintiffs make feeble attempts to distinguish some of the cases cited by defendants, plaintiffs offer not a single case where a false imprisonment claim was allowed to proceed on such facts. Simply calling this extremely straightforward argument for dismissal "lame and fact-intensive" (Pl. Opp. at 11), is an attempt to confuse, not a response.

In any event, as noted in defendants' opening brief, Ms. Creen and Ms. Gardner both swear that plaintiff was free to leave whenever he requested, and there is not a scrap of evidence to indicate the contrary. (<u>Id.</u>, Ex. F at ¶¶ 3-4, Ex. V at ¶¶ 2-4). Thus, even if plaintiff subjectively believed that he was being confined, plaintiff cannot possibly demonstrate that defendant Creen <u>intended</u> to confine him on May 9, 2007, and summary judgment on his claim must still be granted. <u>See</u>, <u>e.g.</u>, <u>Rendely v. Town of Huntington</u>, 2006 U.S. Dist. LEXIS 97203 at \*\*11-15 (S.D.N.Y. Aug. 20, 2006)(collecting cases). Plaintiff offers no response to this argument.

## POINT IV

### DEFENDANTS, AT A BARE MINIMUM, ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiffs initially argue that "qualified immunity does not shield government officials from suits alleging due process or First Amendment violations." (Pl. Opp. at 16). This proposition is not supported by the cases cited and, indeed, hardly merits discussion – many of the leading cases regarding the qualified immunity doctrine involve such claims. See, e.g., Crawford-El v. Britton, 523 U.S. 574 (1998)(First Amendment and due process claims); Behrens v. Pelletier, 516 U.S. 299 (1996)(due process claims); Harlow v. Fitzgerald, 457 U.S. 800 (1981)(First Amendment claims).

Plaintiffs next argue that qualified immunity does not shield defendants from Rockland's retaliation claim because Umbehr, 518 U.S. 668, established "that the First Amendment protects both First Amendment protected activity [sic] and disallows government actors from breaking contractual relationships in retaliation for such activity." (Pl Opp. at 17). It is a well-established doctrine that one cannot defeat qualified immunity by arguing that such general principals of law are clearly established: "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Anderson v. Creighton, 483 U.S. 635, 639 (1987). Accord Wilson v. Layne, 526 U.S. 603, 614-15 (1999).

Plaintiffs further argue that defendant Creen is not entitled to qualified immunity on Gallagher's false imprisonment claim because purportedly she did not abide by DOCS' Counsel's advice in that she told Mr. Gallagher that they were going to take the money he removed from the

8

vending machines <u>after</u> he had passed through the security gates rather than before. (Pl. Opp. at 11-12).[3] This completely wrong – when plaintiffs' counsel questioned Mr. Glassanos in this regard, he made clear that while he advised that Rockland's representative was to be told of the plan "upon arrival," this did not mean that he needed to be told before he passed through the security gates. (Schulze Decl., Ex. H at 54-55).[4] Qualified immunity would apply in any event, because a reasonable person in Ms. Creen's shoes would not have believed that it was clearly established that this slender distinction transformed a counsel-approved exercise of self-help into a constitutional violation.

Finally, plaintiffs offer no response at all to defendants other arguments regarding qualified immunity. To briefly summarize, it was objectively reasonable for Ms. Creen to believe that the termination of the Shawangunk contract in the face of Rockland's flat refusal to perform, and the holding of its equipment to secure payment of amounts owed, did not constitute clearly established constitutional violations – particularly given that these actions had been approved by counsel Glassanos. Similarly, a reasonable official in the place of defendant Riley could have believed that the actions she took were not constitutional violations. Rockland's equipment was not impounded at her facility, and the alleged two-day delay in pick-up would be constitutionally de minimus. Defendant Kidder is entitled to qualified immunity on all the grounds above, and on the further grounds that there is no "clearly established" supervisory liability doctrine that would render him liable for the actions taken at the facilities. See <u>Poe v. Leonard</u>, 282 F.3d 123, 126 (2d Cir. 2002).

---

[3] As noted in defendants' opening brief, Mr. Gallagher's account is accepted <u>only</u> for purposes of this motion. Should the case proceed, both Ms. Creen and Ms. Gardner would testify that the entire conversation took place before Mr. Gallagher passed through the security gates.

[4] When Mr. Glassanos started to elaborate, plaintiffs' counsel cut him off and refused to let him proceed. (<u>Id.</u>, at 55-58).

Finally, qualified immunity applies because there is no evidence to show that any defendant acted with a subjectively improper intent, a necessary element of all plaintiffs' claims. See Sheppard v. Beerman, 94 F.3d 823, 828 (2d Cir. 1996)("Upon a motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts supporting the claim of an improper motive in order to avoid summary judgment"). To the contrary, acting upon the advice of counsel is powerful evidence that they did not act with a constitutionally improper motive. See, e.g., Ponterio v. Kaye, 2007 U.S. Dist. LEXIS 65350 at **26-28 (S.D.N.Y. Sep. 6, 2007); East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1011 (S.D.N.Y. 1992).

## CONCLUSION

For the reasons given above and in defendants' opening brief, their motion for summary judgment should be granted.

Dated: New York, New York
April 10, 2008

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants
By:

_____/s/_____
Daniel Schulze
Assistant Attorney General
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-6557

10

TABLE OF CONTENTS
_____

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I     ROCKLAND'S DUE PROCESS CLAIM IS MERITLESS . . . . . . . . . . . . . . . . . . 2

POINT II    ROCKLAND'S RETALIATION CLAIMS ARE MERITLESS . . . . . . . . . . . . . . 3

      A.    The Retaliation Claim Against Ms. Riley Fails . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Retaliation Claim Against Ms. Creen Fails  . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    The Retaliation Claim Against Mr. Kidder Fails . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT III   PLAINTIFF GALLAGHER'S FALSE IMPRISONMENT
            CLAIM AGAINST DEFENDANT CREEN IS MERITLESS  . . . . . . . . . . . . . . . 7

POINT IV    DEFENDANTS, AT A BARE MINIMUM, ARE ENTITLED
            TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10